## ARMOR ET AL. V. SPALDING ET AL.

1. DEEDS AND MORTGAGES—EXPRESS TRUSTS IN REALTY—STATUTE OF FRAUDS.— In mortgages the defeasance ordinarily provides that upon payment of the debt title to the premises incumbered shall revert to the mortgagor.

2. To constitute a valid express trust in relation to realty, the conditions thereof must, by virtue of the statute of frauds, be in writing.

3. In this state an absolute deed may be shown by parol to be in effect 'a mortgage; but courts of equity can only give this construction to such a deed upon proofs clear, unequivocal and convincing.

4. An unacknowledged deed may be effectual in passing title to realty.

5. EVIDENCE HELD INSUFFICIENT TO PROVE AN ABSOLUTE CONVEYANCE TO HAVE BEEN A MORTGAGE.— In a suit to recover land conveyed by a deed absolute in form, on the ground that there was a parol agreement that it should operate as a mortgage, it appeared that the conveyance was in trust for the use of the Protestant Episcopal Church, with power to the trustee at will to convey the same for such price and upon such terms as to him may seem fit, "the proceeds of any such sale or conveyance to be held in trust for the same object and purpose above expressed;" that the grantor was indebted to the grantee in a greater amount than the value of the land at the time conveyed; that the debt was evidenced by notes and secured by deeds of trust on the land; that at the execution of the deed in question the notes were delivered to the grantor, but the trust-deeds remained unreleased; that the grantee, before the execution of the deed, wrote the grantors: "Of course, should I ever get out of the property more than the church dues, of which I am simply the trustee, it will be competent to consider your rights and dues in the matter." The attorney who drew the deed testified that he understood that it was agreed that the deed should be held to be a mortgage, but his partner and his clerk testified that the conveyance was intended as a final settlement of the indebtedness. *Held,* that the evidence was not sufficient to prove that the deed was a mortgage.

*Error to District Court of Arapahoe County.*

IN 1876, John F. Spalding, as bishop, was the owner of five promissory notes given by John Armor, aggregating $8,380, besides interest at the rate of eighteen and twenty per cent. per annum. These notes were secured by trust-deeds upon the lots in dispute. Subsequently an absolute deed was given by Armor to Spalding, as bishop, covering the incumbered premises. Spalding at once took exclusive possession, and has since paid all taxes, insurance, and other expenses. The promissory notes held by Spalding were delivered to Armor, but at the commencement of this suit no cancellation of the trust-deeds, securing the same, appeared of record.

At the time the absolute deed was given, the property covered thereby was not worth, in the market, the full aggregate amount of the notes, together with interest. At the present time its value is estimated to be from $75,000 to $100,000. Plaintiffs in error, as the heirs of said Armor, brought suit in the court below to recover the premises in question, upon the theory that Spalding held them as mortgagee. Prior to the commencement of suit they offered to pay him the aggregate amount of indebtedness, together with interest to that time, and demanded the carrying out of the alleged mortgage agreement. Their tender and demand were refused.

The answer, after specifically denying the allegations of the complaint, in so far as that pleading alleged a trust or mortgage, averred an absolute sale. It also pleaded additional defenses, which, however, need not be stated.

A replication was filed, duly traversing the material new matter set up in the answer. The cause was tried to the court, and upon the evidence and pleadings a decree was rendered dismissing the complaint. To reverse that decree the present writ of error was sued out.

Messrs. Wells, McNeal & Taylor and Enos Miles, for plaintiffs in error.

Messrs. S. C. Hinsdale and J. L. Jerome, for defendants in error.

Chief Justice Helm delivered the opinion of the court

The complaint in the case at bar avers that the abso lute deed given by John Armor to Spalding, as bishop, coupled with the alleged parol agreement existing at the time of its execution, constituted a mortgage. But in pleading the conditions of the defeasance it declares that Spalding was not only to take possession of the property under the deed, "hold the same in trust, collect all rents and profits, pay all taxes and expenses," but also that "when it so enhanced in value that it could be sold so as to leave Armor a surplus, Spalding should sell, satisfy his indebtedness, and pay the overplus to Armor, his heirs or assigns, on a reasonable request." There was no provision that the title should in any event be restored to Armor. It was conveyed to Spalding with authority to sell. This fact is somewhat inconsistent with the theory of a mortgage; for in mortgages the defeasance ordinarily provides that upon payment of the debt title to the premises incumbered shall revert to the mortgagor. *Lance's Appeal,* 112 Pa. St. 456; *Hoffman v. Mackall,* 64 Am. Dec. 637; *Reece v. Allen,* 48 Am. Dec. 336.

The averments under consideration are more analogous to the conditions of an express trust. Thus regarding the transaction, however, it is obvious that the action must fail. The conditions of the alleged trust not being written, its enforcement is inhibited by the statute of frauds. No bad faith is averred on the part of Spalding in procuring the conveyance, and this case is not covered by an exception to the foregoing statutory requirement.

But counsel for plaintiffs rely, in argument, entirely upon the view that the transaction constituted a mort-

gage, and that plaintiffs, as the heirs of Armor, since deceased, may assert a right to the reconveyance of the property upon payment of the mortgage debt, with interest. If their major premise be correct, their conclusion correctly follows, unless the remedy is barred by limitation, or for some other reason cannot be enforced. The equitable rule that an absolute deed may be shown by parol to be in effect a mortgage has, in this state, received express legislative recognition. Civil Code, § 261. We shall assume that the mortgage issue is sufficiently presented by the pleadings, and proceed to consider whether the evidence sustains plaintiffs' theory.

It should be observed at the outset that only upon clear, unequivocal and convincing proofs will courts of equity construe an absolute deed to be in effect a mortgage. *Whitsett v. Kershow,* 4 Colo. 419; *Lance's Appeal, supra; Gassert v. Bogk,* 7 Mont. 585; Jones, Mortg. (4th ed.) § 335, and cases cited. Plaintiffs have engaged in a difficult undertaking. They are to show a parol defeasance agreement made over twelve years prior to the commencement of suit, with an ancestor, who died soon after making the same; and upon them rests the burden of establishing this agreement so clearly that the mind of the chancellor shall be free from substantial doubt.

To maintain the foregoing issue, and discharge the resulting burden, plaintiffs rely upon the following proofs:

*First. A letter written October 9, 1875, by Spalding to John Armor.* Armor was hard pressed for money, and, as the closing paragraph of the letter sympathizingly declares, in "perplexity and distress." He was seeking relief, not through the giving of an absolute deed to Spalding, but by urging the latter to release some part of the premises covered by the five trust-deeds, then securing as many notes of Armor given or assigned to Spalding, as bishop. The letter in question was written in response to this urgent appeal. Spalding therein speaks of having consulted with Mr. Kountze and other

friends regarding the matter, and declines to grant the request. It is true he says incidentally: "Of course, should I ever get out of the property more than the church dues, of which I am simply the trustee, it will be competent to consider your rights and dues in the matter; but I fear that we shall have to wait for some years, and the interest of the money will more than cover any enhancement in value." But while the letter speaks of "closing up the matter," and refers Armor to Sayre for that purpose, no terms of settlement are specified. This letter was written over fourteen months prior to the execution of the absolute deed. It is not in any way connected therewith by extrinsic evidence, and there is nothing to show that it was mentioned or thought of when the deed was given. But, even if coupled with the transaction, it affords little aid to plaintiffs' case. The declaration that in the unexpected contingency of a sale and surplus *it would be competent* to consider Armor's rights and dues in the matter is not an agreement to pay over the surplus, nor does it indicate the existence of such an agreement. It shows, at most, a disposition on the part of Spalding to favor Armor within legal and reasonable bounds.

*Second. A conversation between two of the plaintiffs and Spalding in 1888, after demand had been made for a reconveyance of the property.* In this conversation, it is claimed that when asked whether a parol agreement was not made with the elder Armor at the time the deed was given, providing for an ultimate sale and repayment to him or his heirs of the overplus after liquidation of the indebtedness, Spalding hesitated and then answered: "Well, the moneys that your father used belonged to eastern trusts, and whatever I might have said would not have made any difference." Spalding, in his testimony, declares that there was not the slightest hesitation in answering. He does not squarely deny having used the foregoing or similar language, but asserts that

he at once positively and persistently insisted that the transaction was an absolute sale. So the alleged hesitancy and equivocation are evidenced only by the testimony of two deeply interested witnesses, while their existence is disputed by defendant, who acted throughout the entire proceedings solely as a trustee for others. Besides, in his letter inviting this very interview, Spalding expressly declares that he was compelled, much against his will, to take the property for the debts; also, that Armor begged him not to foreclose, "for in that event he [Armor] might have been held for a large amount over and above the proceeds of sale, and judgment obtained against him." This letter was offered in evidence by plaintiffs, and fairly corroborates Spalding's declarations on the witness stand. If, at the interview, as in the letter, he maintained that the deed represented an absolute sale, a plausible explanation of the statement imputed to him would be that like his other suggestion in the letter, that a suit could only be settled in the supreme court of the United States, it was legal advice volunteered upon the doubtful hypothesis that even if he *had* made oral concessions the real parties in interest would not be bound thereby.

*Third. The part we have, for convenience, italicised, of the following extract from the absolute deed under consideration:* " In trust, however, for the use of the said Protestant Episcopal Church, *with power to the said party of the second part, or his successor in office, at will, to convey the same, either with or without warranty, for such sum and price, and upon such terms and conditions, as to him, or any of his successors in office, shall seem fit;* the proceeds of any such sale or conveyance to be held in trust for the same object and purpose above expressed." The purpose of expressly providing that Spalding might sell the premises conveyed is explained by the extract itself. It is evident from the language employed that the provision had reference to the position

of Spalding, as trustee of church property. He took title in his trust capacity, and caused the deed to be so drawn that no embarrassment would follow in reselling and re-investing the proceeds. That, in any event, Armor was not to be the beneficiary, clearly appears by the conclud-ing clause of the quotation, which provides that the pro-ceeds are to be held in trust for the "purpose above expressed," *i. e.*, for the use of the Protestant Episcopal Church.

*Fourth. A certain indorsement upon one of the prom-issory notes.* It appears that an item of $38.05 interest was credited upon one of the Armor notes by Spalding on December 23, 1876. It will be remembered that the deed in question bears date December 13, 1876, and plaint-iffs argue that this credit indicates that Armor's interest in the property did not terminate with the giving of the instrument. The complaint avers, and the answer does not deny, that the conveyance was executed and deliv-ered on December 13th. Moreover, it is true that unac-knowledged instruments of the kind may nevertheless be effectual in passing title. But counsel for defendant insist that especially since this is a suit in equity, the following circumstance may be considered: The deed itself, which was *received in evidence without objection or limitation*, shows that it was not *acknowledged or filed for record* until upwards of three weeks after its date, and more than two weeks after the credit men-tioned was given. Counsel urge that from this circum-stance the inference may be fairly drawn that the trans-action represented by the deed was not finally closed till January 12th, the date of acknowledgment and record-ing. The matter is not of sufficient importance to war-rant a discussion of the question of practice involved, and we shall leave it with the single remark, that if counsel's view be correct, the supposed discrepancy arising from the indorsement of interest entirely disappears.

*Fifth. That the trust-deeds originally given to secure*

*the notes have never been released upon the county records.*
Spalding, as bishop, was the real owner of these instru-
ments, and Armor's deed in fact merged in him the en-
tire ownership of the property. Though the notes were
canceled, it was imprudent, perhaps, to permit this seem-
ing cloud to remain of record. But until an attempt to
convey, the importance of a formal release might not
occur to any but a legal mind. The circumstance in
question, therefore, possesses no great significance.

*Sixth and last. The testimony of Alfred Sayre.* Mr.
Sayre acted as the attorney, advising with Armor and
Spalding concerning their matters. He gives his recol-
lection of the conversations that took place in his office
between the parties about the time of the execution of
the instrument. He does not undertake to relate these
conversations; but, after giving the substance, which
strongly corroborates plaintiffs' theory, he concludes
with the declaration that he "had no moral doubt that
an equity of redemption or right to the surplus rested in
Armor." This is the most cogent evidence produced by
plaintiffs; but in considering it we should remember that
Mr. Sayre was an attorney in active practice, carrying
in his mind a multitude of transactions; that upwards
of thirteen years have elapsed since the occurrence, and
during that time his attention has never before been di-
rected to the matter; that he now admits his inability to
recall specifically the conversations; and that his impres-
sions, which constitute part of his testimony, are not
competent. But Mr. Sayre's recollection and impressions
on the subject are different from those of Messrs. Wright
and Jerome. The former was Mr. Sayre's law partner;
the latter was then a clerk in the office. Both were
present when the deed was made; both heard conversa-
tions between Spalding and Armor in connection there-
with. Their recollections and impressions of these con-
versations are to the effect that the deed was delivered

and accepted in final settlement of the notes, and as a full discharge of the indebtedness represented thereby.

Fairly weighing the foregoing proofs alone, in the light of surrounding circumstances, the burden assumed by plaintiffs is not discharged. It cannot be said that the existence of a mortgage is so established as to relieve the mind of a chancellor from substantial doubt. But the testimony of Spalding is strongly corroborated by the following circumstances, as yet unconsidered.

*The promissory notes were evidently delivered back to Armor when the deed was executed.* Plaintiffs themselves produced these notes at the trial. There is nothing in the record showing or tending to show that new ones were given. Had the transaction been in reality a mortgage, Spalding would, in all probability, either have kept the original notes or have insisted upon the execution in lieu thereof of a new instrument, conditioned according to the terms of the defeasance, and specifying the rate of interest.

*The defeasance condition of the alleged mortgage is highly unreasonable.* Spalding is required thereby to hold the mortgaged property until such time as its enhancement in value will enable him to sell it and leave a surplus for the mortgagor. He cannot sell, apply the proceeds to the discharge *pro tanto* of the indebtedness, and forgive the balance thereof; he cannot even make the sale when there has been sufficient increase of value to wholly liquidate his debt with interest; he must wait until such time as its enhancement will leave a surplus for Armor; how much of a surplus does not appear, the amount thereof being wholly unmentioned. No date is fixed for the payment or even maturity of the principal debt, though, when the deed was given, the original notes were all past due. There was no certainty that the property would ever so enhance in value as to pay the debt, with accumulating interest, to say nothing of a

surplus.   According to the complaint, as a matter of fact, there could have been no surplus until more than ten years had expired.   The alleged arrangement is devoid of business characteristics.   It is such an arrangement as no man of ordinary prudence would be likely to make in conducting his personal affairs.   It is such an arrangement as the law would be extremely loath to sanction when made by a trustee in the management of a trust-estate.

In view of the foregoing conclusion, it is unnecessary for us to consider the defenses based upon statutes of limitation.   We shall not further prolong this opinion by discussion thereof.

The judgment of the district court is affirmed.

*Affirmed.*