No. 12,571.

OPPEGARD v. OPPEGARD.
(10 P. [2d] 333)

Decided April 4, 1932.

Mr. B. F. Reed, Mr. M. M. Rinn, Mr. Wade P. Connell, for plaintiff in error.

Mr. Henry E. May, Mr. Harry S. Class, for defendant in error.

*In Department.*

Mr. Justice Butler delivered the opinion of the court.

Charles A. Oppegard sued Louise J. Oppegard, alleging that two quitclaim deeds given by him to her were in fact mortgages, that he paid the debt secured thereby, but that notwithstanding the fact that she received payment in full, she refuses to reconvey the property to him. Mrs. Oppegard, called to the stand by Oppegard for cross-examination, gave in full her version of the transactions, and the plaintiff gave in full his version of the transactions, and then rested. The court thereupon granted Mrs. Oppegard's motion for a nonsuit and dismissed the case. The case was presented below on the theory that the court was to consider the testimony of the respective parties and determine in whose favor the evidence preponderated, the same as though Mrs. Oppegard had testified in her own behalf. It is presented here on the same theory.

On June 2, 1920, the plaintiff, then a widower, and the defendant, then a widow, married. On July 1, Oppegard acknowledged a quitclaim deed conveying to his wife his interest in an undivided one-half interest in the east one-half of section 4 in a certain township in Adams county. The next day Mrs. Oppegard paid $10,000 to her husband. Five days later the deed was recorded. On November 8, 1921, Oppegard executed a quitclaim deed conveying to his wife all his interest in the northeast quar-

ter of said section 4. We will consider these deeds in their order.

Oppegard claims that the $10,000 was a loan to him and that the deeds were given as security only; whereas Mrs. Oppegard claims that she bought outright her husband's interest for $10,000 and paid the purchase price. She testified that it was an absolute sale; that when he gave her the deed he said to her, "You are the owner of the land, too"; that he never mentioned mortgage to her. The uncontradicted evidence is to the effect that no promissory note was given for the $10,000; that upon receiving the deed Mrs. Oppegard was given possession of the property; that she retained such possession; that she paid the taxes and water assessments for eight years; that she made valuable improvements on the property; that she leased the premises and collected the rents as owner; that she insured the premises and crops in her own name, and collected hail insurance as owner; and that, with Oppegard's knowledge, she sold part of the premises. During all that time Oppegard did not pay any taxes or collect any rent or insurance, or perform any other act of ownership. He made no objection to Mrs. Oppegard's acts concerning the property. Oppegard made out his wife's income tax return, in which he included the rents as his wife's income. On April 6, 1928, he sued for divorce. A decree, however, was awarded to his wife on her cross-complaint. In his complaint in that suit he sought a division of the property. In a bill of particulars he stated under oath that the $10,000 was *not a loan,* but was paid pursuant to an antenuptial agreement whereby he and his wife were to share their property "fifty-fifty," and that his quitclaim deed was given pursuant to that agreement. In the verified complaint in the present case the plaintiff alleges that the deed was given by him and accepted by his wife as security for a loan of $10,000; but his counsel admit that at the time of the delivery of the deed he did not actually intend it as security for the $10,000, but intended to

invest his wife with an equal interest in the property pursuant to their previous understanding that their property should be shared equally. They contend, however, that such intent was not shared by Mrs. Oppegard; or, if there was such understanding, that the parties subsequently came to a different understanding, as a part of the same continuing transaction, whereby they definitely fixed the character of the instrument as being a mortgage to secure the moneys that were advanced by defendant to the plaintiff at the time the deed was delivered; and, thereafter, through their conduct—the one in making payment of the mortgage debt, and the other in accepting such payment—they are estopped, as against each other, to say that the deed was not a mortgage. The manner in which it is claimed payment was made was by the assignment, in June, 1922, of a certificate of redemption, which transaction will be discussed after we consider the giving of the second quitclaim deed.

On November 8, 1921, Oppegard gave his wife a quitclaim deed to all his interest in the northeast quarter of section 4. Oppegard claims that he gave this as additional security for the $10,000 received by him on July 2, 1920. Mrs. Oppegard denies this. She testified that the deed was given as an absolute conveyance. When Oppegard gave his wife the deed in July, 1920, he told her that he owned the land. As a matter of fact, he held the title to the southeast quarter merely as security for a loan that he had made to one Gagan. In the fall of 1920 Gagan sued Oppegard and his wife to have his deed decreed to be a mortgage, and in November, 1921, he obtained such a decree. Mrs. Oppegard testified that the deed given by Oppegard on November 8, 1921, was given ''on account of the lies he had told'' her; to ''square himself'' with her by ''making it all right''; that she was anxious about the Gagan suit, and had accused Oppegard of not being ''on the square'' with her in selling to her land that belonged to another man; that he had promised to make it all right after the Gagan trial; that he gave

the deed to her for "love and affection." "I bought half interest in the land to start in and the rest he gave me."

There was a first mortgage for $7,000 on the southeast quarter. After Gagan obtained a decree that his deed to Oppegard was a second mortgage, Mrs. Oppegard's son by a former marriage bought the first mortgage and fore-closed. Oppegard, as a creditor of Gagan, redeemed from the foreclosure sale on June 1, 1922, and on the same day assigned the redemption certificate to his wife, who later received the sheriff's deed. Oppegard claims that this assignment was given and accepted as payment of what he contends was the $10,000 loan. But Mrs. Oppegard flatly denies that such was the case. She did not re-deed the property to Oppegard; nor did he ever request a reconveyance until about February 11, 1928, although the assignment, which Oppegard claims was payment of the debt, was made on June 1, 1922. And when he did request a reconveyance, he made no claim that the deeds were mortgages and that he had paid the debt. His claim at that time was set forth in the bill of particulars in the divorce case, to which we have already called attention. After the assignment, as before, Mrs. Oppegard dealt with the property as owner.

Oppegard's counsel vigorously attack the credibility of Mrs. Oppegard. They say that some of her testimony in the divorce case contradicted her testimony in the present case; and that is true. But Mrs. Oppegard's counsel, with equal vigor, assail the credibility of Oppe-gard. They say that his contention in the divorce case is at variance with his contention here, as disclosed by his complaint; and, as we have seen, that is true. From an examination of the record, we conclude that the trial court felt that it would be unsafe to rely upon the uncor-roborated testimony of either party. In such a situation, what the parties actually did, as distinguished from what they testified, is of the utmost importance. As we have seen, their acts and dealings with the property are con-

sistent with Mrs. Oppegard's claim that she was the owner of the property, and inconsistent with Oppegard's claim that she was merely a mortgagee, and that he paid the mortgage debt. There was a mass of evidence introduced, but it is not necessary, for the purpose of a determination of the case, to review it at greater length.

The deeds purported to convey Oppegard's interest. A deed purporting to be an absolute conveyance may be proven by parol evidence to be, in effect, a mortgage. Code of Civil Procedure, section 281. But to have that effect, the evidence must be clear, certain and unequivocal, and must be convincing beyond a reasonable doubt. *Whitsett v. Kershow,* 4 Colo. 419; *Townsend v. Petersen,* 12 Colo. 491, 21 Pac. 619; *Armor v. Spalding,* 14 Colo. 302, 23 Pac. 789; *Perot v. Cooper,* 17 Colo. 80, 28 Pac. 391; *Davis v. Hopkins,* 18 Colo. 153, 32 Pac. 70; *Butsch v. Smith,* 40 Colo. 64, 90 Pac. 61; *Enos v. Anderson,* 40 Colo. 395, 93 Pac. 475, 15 L. R. A. (N. S.) 1087; *Denver Sanitarium & Hospital Association v. Roberts,* 65 Colo. 60, 174 Pac. 300; *Ver Straten v. Worth,* 79 Colo. 30, 243 Pac. 1104.

The burden of proof rested upon Oppegard, and the evidence relied upon by him to establish his case does not meet the requirements of the law.

The judgment is right and is affirmed.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE BURKE concur.