No. 15,886.

JONES ET AL. *v*. HAZEN.
(181 P. [2d] 1016)

Decided May 26, 1947.  Rehearing denied June 16, 1947.

Mr. CARL CLINE, Mr. B. F. REED, for plaintiffs in error.

MR. BENJAMIN GRIFFITH, for defendant in error.

*In Department.*

MR. JUSTICE HAYS delivered the opinion of the court.

JAMES HAZEN, plaintiff below, executed a warranty deed to certain mountain lots, with a house thereon, to Lloyd S. Jones and Florence M. Jones, his brother-in-law and sister, respectively, and received from them the sum of one hundred and fifty dollars.

Approximately a year thereafter, plaintiff tendered to defendants the above-mentioned sum, together with a further sum to reimburse them for expenditures which they had made for taxes and improvements, and demanded the reconveyance of the property, which defendants refused, claiming that the deed received from him was an absolute conveyance in form and was intended as such and was not to operate as a mortgage. Whereupon, this action was brought: to have said deed declared a mortgage; the property reconveyed; and the plaintiff given the right to redeem. The trial court found in favor of the plaintiff, and ordered defendants to reconvey to him upon the payment to them of certain sums found by the court to be due to the defendants. The latter seek reversal of said judgment.

It is conceded by all parties hereto that the only question for determination on this review is whether or not the evidence is sufficient to sustain the findings and decree of the trial court.

Counsel for plaintiffs in error, defendants below, contend, and have cited many Colorado cases in support of their contention, that while oral testimony is admissible under the code to show that a deed absolute in form is in effect a mortgage, yet such proof must be clear and convincing, and that it is the duty of this court to carefully examine and consider the evidence to determine whether or not the same is sufficient to support the judgment, and to ascertain whether the finding of the trial court is the result of bias, prejudice, mistake, or

464

misapprehension or misconception of the legal effect of the evidence.

Most of the cases upon which plaintiffs in error rely, were cited and followed in *Oppegard v. Oppegard,* 90 Colo. 483, 10 P. (2d) 333, which in our view, is analogous to the facts here presented, and decisive of the instant case. We said at page 487: "Oppegard's counsel vigorously attack the credibility of Mrs. Oppegard. They say that some of her testimony in the divorce case contradicted her testimony in the present case; and that is true. But Mrs. Oppegard's counsel, with equal vigor, assail the credibility of Oppegard. They say that his contention in the divorce case is at variance with his contention here, as disclosed by his complaint; and, as we have seen, that is true. From an examination of the record, we conclude that the trial court felt that it would be unsafe to rely upon the uncorroborated testimony of either party. In such a situation, what the parties actually did, as distinguished from what they testified, is of the utmost importance. As we have seen, their acts and dealings with the property are consistent with Mrs. Oppegard's claim that she was the owner of the property, and inconsistent with Oppegard's claim that she was merely a mortgagee, and that he paid the mortgage debt."

█ In the present proceeding, as in the Oppegard case, the credibility of each party was severely attacked by the other, and with considerable justification. An examination of the record discloses that the testimony of both defendants and plaintiff is, on the whole, highly inconsistent, contradictory, and irreconcilable. Under such circumstances, we must consider, as said in the Oppegard case, "what the parties actually did," and disregard their testimony except as the same is corroborated by other witnesses and circumstances. From an examination of the record we find that the acts and dealings of the parties concerning the property, and most of the surrounding circumstances, are consistent with the

plaintiff's claim that the deed was intended to be a mortgage as found by the trial court.

After the delivery of the deed to defendants, they had new locks installed on the doors of the house, and new keys made, one of which was delivered to the plaintiff; plaintiff continued to use the house from time to time much the same as he had done before the delivery of the deed, and otherwise exercised acts of ownership over the property, including the making of repairs thereon costing approximately ninety dollars, all of which was with the knowledge and acquiescence of defendants; he placed the property in the hands of William M. Weller, a real estate broker, for sale, who had obtained three offers to purchase for sums ranging from two thousand dollars to twenty-five hundred dollars, and at one time Jones assisted the broker in setting stakes marking the boundaries of the property for a prospective purchaser. Weller testified that the reasonable value of the property at the time the deed was executed was between two thousand and twenty-five hundred dollars, and that defendant Lloyd Jones told him "his only interest was in getting back what he had loaned" plaintiff. This testimony of the broker corroborated plaintiff's testimony that Jones said to him at the time the money was given to plaintiff "under no circumstances will I give you this money unless you agree that you will take that cabin back any time you want it;" the witness Carey, a friend and room-mate of plaintiff, testified that in the fall of 1945, the defendant, Mrs. Jones, said: "Jimmy, I don't know why you keep two cabins. Why don't you sell the one in Genesee Park?" and he further testified that a short time later, while visiting at the defendants' home, he heard plaintiff say to the defendants, that he "wanted to get the money straightened out with them that he owed them so that he could get the place back in his name and have the freedom of going ahead and selling it," and that defendant Lloyd Jones then said that "he could seen no reason for having it transferred back into

Jimmy's name; he could go ahead and sell it anyway and Mr. Jones could just transfer it over to him without the expense of having it transferred back—— Q. He said Mr. James Hazen could go ahead and sell it and he [defendant] would transfer it over to the purchaser, is that it? A. Yes. Q. Was Mrs. Jones present at that time? A. Yes. Q. Did she make any objection to that? A. No, they both agreed."

It is true defendants in their brief attack the credibility of the real estate broker and they assert that his testimony is unworthy of belief. This, however, is inconsistent with an incident which occurred during the trial where the broker testified, "I have no ill feeling against anybody, and no interest," and defendants' attorney said, "Nobody is accusing you of that." It would appear, that if the real estate agent had no interest in the outcome of the suit, as counsel for defendants concede, it is unreasonable to assume he testified falsely.

In the defendants' answer it is stated: "The price of one hundred and fifty dollars ($150.00), so paid to the plaintiff by the defendants, was not an unreasonable amount under the circumstances then and there existing," but at the close of the testimony defendants asked leave to amend the answer, by adding after the above quotation the words, "and that the plaintiff deeded the property in question to the defendants partly as a gift." The fact that defendants changed their position during the trial indicates the weakness of their former position that the purchase price "was not an unreasonable amount" for said property under the circumstances.

It is conceded that the plaintiff in 1943 paid the sum of five hundred dollars for this property, and that he placed some improvements thereon prior to the time the deed in question was executed. He testified that the value of the improvements was approximately sixteen hundred dollars. This statement is corroborated by the testimony of the real estate broker that the value of the property at the time the deed was executed, was be-

tween two thousand and twenty-five hundred dollars. It is inconceivable that plaintiff would sell the property outright for one hundred and fifty dollars if he were dealing with grantees at arms length, and this fact, no doubt, prompted defendants, in amending their answer, to allege that part of the consideration was a gift.

All the above circumstances are consistent with plaintiff's claim that the deed was intended as a mortgage for security of a loan, and inconsistent with defendants' claim of sale, especially in view of the wide variance between the amount paid and the actual value of the property.

"One of the recognized tests of the character of a conveyance on an issue of mortgage or no mortgage is the quantitative relationship between the consideration for the conveyance and the actual value of the property conveyed. Thus, evidence to the effect that the actual value of the property greatly exceeded that of the consideration, it is universally conceded, tends to show the transaction a mortgage and not a sale, the disparity being sufficient to have this tendency when the ratio of value is two to one, or even less, and being insufficient when such as to indicate merely that the grantor obtained a good bargain." 19 R.C.L. 259, §27.

We cited and followed the above text in *Wilson v. Giem,* 90 Colo. 27, 5 P. (2d) 880, where we said: "It is assigned as error that the record shows the findings, judgment and decree to be the result of passion and prejudice, but the carefully prepared instrument signed by the learned trial judge indicates the opposite. It gives plaintiff only that to which she is entitled; it calls for the payment to defendant Wilson of all that is due him; it denies damages to either party; it is prefaced by sufficient pleadings and proof. In effect, the decree prevents Wilson from unlawfully acquiring the fee title to property shown to be worth from $6,000 to $7,500 for a debt of about $2,300, contrary to the evident purpose

468

of the parties. Value is one test tending to show the character of the transactions. 19 R.C.L., p. 259, §27."

██ ██ No useful purpose could be served by a review of all of the evidence. From the above facts alone it is apparent that there was ample, competent evidence to support the judgment and that the same is sufficiently clear and convincing to satisfy all the requirements of the decisions cited in the briefs of defendant in error, that the findings and judgment were not the result of bias, prejudice, or misapprehension or misconception of the legal effect of such evidence. In any event, and in the final analysis, the credibility of the witnesses and the weight to be given their testimony was exclusively for determination by the trial court. From a careful examination of all of the evidence, we cannot say that the trial court erred in arriving at its conclusion.

The judgment is affirmed.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE STONE concur.