No. 14,270.

Logsdon *v.* Quiat et al., Receivers.
(81 P. [2d] 770)

Decided July 11, 1938.

Mr. James E. Griffith, for plaintiff in error.

Mr. Samuel S. Ginsberg, for defendants in error.

*In Department.*

Mr. Justice Young delivered the opinion of the court.

The parties appear here in the same order as in the district court and except where designated by name or as the receivers, reference will be made to them as petitioner and defendants.

Petitioner, Emma M. Logsdon, filed her petition in the

district court of the City and County of Denver, for permission to sue the receivers of the Star Loan Company, a corporation, under a receivership pending in said court. The court denied her petition and she, assigning such ruling as error, seeks a reversal in this court.

The facts as disclosed by the record are substantially as follows:

May 5, 1928, petitioner executed her note for $2,000, payable May 5, 1933, securing the same by a trust deed on 640 acres of improved land in Fremont county. Before maturity and for value this note was transferred to Morris Schtul.

January 6, 1931, Schtul gave his confession of judgment note to the Star Loan Company for $1,000, securing the same with petitioner's $2,000 note as collateral.

October 23, 1931, the Star Loan Company procured judgment on the $1,000 note by confession against Schtul and filed a transcript of the same, making it a lien on two lots in Denver owned by Schtul.

July 19, 1932, the Star Loan Company induced petitioner Logsdon to give a quitclaim deed to the company conveying to it the land covered by the Schtul mortgage, and contemporaneously with the execution of this deed entered into a contract with her as follows:

"Agreement Denver, Colorado, July 19, 1932.
Know all men by these presents:

"That whereas Emma M. Logsdon, formerly known as Emma M. Stepp, has this day conveyed certain real property situated in Fremont County, Colorado, to the Star Loan Company, by quit claim deed, and it is her desire to have same reconveyed to her if she is able to comply with certain terms and conditions imposed by the said The Star Loan Company;

"It is therefore mutually agreed that the said The Star Loan Company will reconvey said real property to said Emma M. Logsdon, provided however, that all of the following terms and conditions are complied with, to wit:

"The said Emma M. Logsdon shall on or before January 1, 1933:

"Pay the sum of $1,000.00 advanced to Morris Schtul on her note dated May 5, 1928, payable to the order of E. Schreiber, and now held by the Star Loan Company;

"Pay all interest accrued on said note as of the date when paid—in no case to be paid later than January 1, 1933;

"Pay all taxes owing on the date of redemption from the Star Loan Company, including taxes paid by it to prevent tax sale;

"Return the sum of $25.00 paid her this date.

"Reimburse the Star Loan Company for its expenses in foreclosing the collateral given it by Morris Schtul;

"Provided however, in all events, that if at any time between this date and January 1, 1933, the said Morris Schtul shall pay his obligation to the Star Loan Company and demand the return of his collateral security, the said Loan Company shall be releaved [relieved] of the obligation to reconvey said Fremont County real estate to the said Emma M. Logsdon, formerly known as Emma M. Stepp.

"In witness whereof the parties hereto have affixed their hands seals at Denver, Colorado, the day and year first above written.

Emma M. Logsdon, formerly known as Emma M. Stepp

The Star Loan Company, by Harry Rosenbloom, Secretary."

Prior to August 1, 1932, and after Schtul had learned of the quitclaim deed from petitioner to the company, Schtul called the attention of the Star Loan Company to the fact that the insurance policy on the improvements on the farm was about to expire. The policy was not renewed and expired on or about August 1, 1932. About three weeks after the insurance lapsed a fire destroyed nearly all of the improvements. This fact is not material in determining the legal rights of the parties involved in this

action, but is important for the light it throws on their subsequent conduct.

March 3, 1933, the district court appointed receivers to liquidate the Star Loan Company, who were authorized to continue the operation of the company for the purpose of liquidating and winding up the same.

March 13, 1933, an order was entered in the receivership providing that "all creditors of said The Star Loan Company shall file their claims with the receivers in the within entitled cause on or before May 15, 1933, provided thirty days' notice by registered mail be given to all creditors." The order contained the usual provision that creditors not filing on or before said date should be precluded from thereafter asserting such claims.

Pursuant to said order Schtul filed a number of claims against the company, including one for damages by reason of the company's failure to keep the aforesaid improvements insured, as a consequence of which fact the value of his note and mortgage held by the company as collateral for his $1,000 note was impaired. A compromise was effected between Schtul and the receivers, approved by an order of court dated January 2, 1935, in a proceeding to which petitioner was not a party, authorizing the receivers to turn back to Schtul, with other collateral not here involved, the $2,000 note held by the company as collateral for the $1,000 note and to convey to him the land which had been conveyed to the company on July 19, 1931, by petitioner Logsdon to be held by the company subject to the terms of the contract. Up to the time of the entry of this order, and the conveyance of the land to Schtul pursuant thereto, petitioner Logsdon had no claim against the company that she could have filed which could have been allowed. Under her conveyance and contract with the company she had a right to redeem the land on certain conditions specified in the contract. The company had no right to so deal with the land as to deprive her of her right of redemption, clearly contemplated by the contract. That the company held it but conditionally is evi-

denced by the fact that upon the payment of certain money it was to be reconveyed to her. In legal effect the conveyance with the right to a reconveyance upon the payment of a certain amount of money constituted the transaction a mortgage.

In her petition petitioner makes the following allegation with respect to the contract that she entered into with the Star Loan Company: ''That said instrument expressed the agreement of the parties except that the true understanding and agreement between petitioner and said company, was that said company was forthwith to foreclose on said collateral security of said Morris Schtul; that the time that petitioner was to have within which to comply with the terms and conditions of said agreement was on or before January 1, 1933, or at any time thereafter, and that if she did so comply, said company was to release her said note and trust deed and reconvey said property to her, free and clear thereof, and that said instrument between her and said company is erroneous and wrong by mutual mistake of both parties thereto in not so stating.''

A reading of the contract shows that it is ambiguous in certain respects. The first paragraph of the instrument states that the reconveyance was to be made if petitioner complied ''with certain terms and conditions imposed by the said The Star Loan Company.'' These conditions were the payment on or before January 1, 1933, four months before her $2,000 note was due (this note was due May 5, 1933), of the $1,000 advanced to Schtul; the payment of all interest accrued on said $2,000 note to the date that payment of the $1,000 should be made; the payment of ''all taxes owing on the date of redemption from the Star Loan Company including taxes paid by it to prevent tax sale;'' the repayment by her of the sum of $25 paid her on the execution of the contract; and the reimbursement of the Star Loan Company for its expenses in foreclosing the collateral given it by Schtul. This collateral was petitioner's note for $2,000 secured by the trust

deed. Reimbursement for expenses in foreclosing the collateral necessarily implied that the Star Loan Company was either to foreclose on the collateral as such or to foreclose the collateral itself, namely, the trust deed securing the note for $2,000. This provision of the contract necessarily implying such foreclosure, though not specifically providing for it, we think is a sufficient ambiguity in the contract to permit evidence dehors the contract to explain the intent and understanding of the parties with respect to such foreclosure. If we assume, as the receivers contend, that time was of the essence of the contract and that petitioner was required to do these things on or before January 1, 1933, the further provision that if Schtul paid his obligation to the Star Loan Company before January 1, 1933, that the loan company should be relieved of the obligation to reconvey the real estate to petitioner, likewise should be so construed. But Schtul did not pay his obligation prior to January 1, 1933, from which it would follow, construing time to be of the essence of this provision, that the loan company was not relieved of its obligation to reconvey the property to petitioner.

Presumably parties do not make conveyances and enter into contracts unless they deem it to be to their mutual advantage to do so. An analysis of the contract in the light of the existing situation discloses advantages to both parties to the contract. It was to the interest of the loan company to have the Schtul loan of $1,000 repaid. To secure this loan the company had the $2,000 obligation of petitioner Logsdon. Under the contract if the company foreclosed on the collateral, or foreclosed the trust deed comprising a part of the collateral, it would ultimately acquire the lands in payment of the Schtul obligation. After acquiring ownership of the note and trust deed, if the company foreclosed on the collateral or obtained a certificate of purchase to the property by sale under foreclosure of the realty petitioner Logsdon, under the contract with the company, might secure her property free

and clear of the encumbrance by payment of the Schtul obligation of $1,000, interest, taxes and the $25 paid to her by the company when the contract was executed, and thereby possess her real property freed from encumbrance, by the payment of an amount considerably less than would be required to satisfy the note held by Schtul. The company would benefit under the contract to the extent of having the Schtul obligation to it paid and would receive in addition the amount of interest due on the $2,000 note to the date that such payment was made. There was an incentive for petitioner Logsdon to make this payment to the company before the due date of her note, May 5, 1933, in order to obtain such a substantial discount. To protect itself against the contingency of Schtul paying the note before January 1, 1933, the company provided in the contract that such payment should relieve it of the obligation to reconvey the property. This contingency did not occur. Schtul failed to make the payment, and the contract did not provide what should be done in the event he failed to pay by the time specified, and in the absence of such a provision the situation must be dealt with as the equities of the parties to the contract require. In the absence of words clearly indicating such an intent it can scarcely be assumed that petitioner Logsdon intended to relinquish to the Star Loan Company her right to redeem from a foreclosure of the Schtul trust deed property alleged to be of the value of $10,000 unless she received some consideration for such relinquishment.

Under no circumstances do we think the company could use as its own petitioner Logsdon's equity in the property, over and above the $2,000 mortgage, to effect an adjustment of conflicting claims between itself and Schtul. If the receivers saw fit so to dispose of her equity in the property, merely because they had it within their power, thereby bringing into existence a claim against them which had not theretofore existed, it was not within the discretion of the court to refuse to permit her to bring suit against them unless it also provided that the matter

might be determined between the parties in the receivership action and as an incident to it.

We think it is within the discretion of the court to determine whether it will permit the receivers to be sued or the matter to be presented as a claim. 53 C. J. 339, §553. Since the claim arose by virtue of the act of the receivers long after the date for filing claims against the estate was fixed, petitioner cannot be precluded from having her controversy determined in one way or the other.

The judgment of the trial court denying petitioner leave to sue is reversed and the cause remanded to the district court with instructions either to permit the filing of a suit against the receiver or to permit the filing of a claim in the receivership proceedings to be determined as an incident thereto, as the court in its judgment shall deem advisable.

Mr. Chief Justice Burke, Mr. Justice Bouck and Mr. Justice Knous concurring.