No. 14,841.

ARDELL, ADMINISTRATOR *v.* BLAMEY.
(121 P. [2d] 485)

Decided January 5, 1942.   Rehearing denied January 26, 1942.

Messrs. LANGDON & BARBRICK, Mr. HENRY M. KLEIN, for plaintiff in error.

Messrs. DEVINE, PRESTON & PETERSEN, for defendant in error.

*In Department.*

MR. JUSTICE OTTO BOCK delivered the opinion of the court.

THIS action originally was instituted by Josephine Ardell as plaintiff against Frank W. Blamey, and Frank W. Blamey as administrator of the estate of Georgia Ardell Blamey, also known as Georgia Ardell Zeiger, deceased, for the purpose of having a deed declared to be a mortgage and the indebtedness secured thereby satisfied, and for other relief. For convenience, we will hereinafter refer to Josephine Ardell, the original plaintiff in error, as plaintiff; reference will be made to Frank W. Blamey as an individual, and as administrator, as defendant; Georgia Ardell Blamey, to whom reference is sometimes made as Georgia Ardell Zeiger, will be designated as Georgia; and Emmett A. Ardell will be mentioned as Emmett. Georgia passed away a short time prior to the commencement of this action. Plaintiff's death occurred subsequent to the trial, and Emmett A. Ardell, as administrator of her estate, was substituted as plaintiff in error.

The trial court found, inter alia: "That the allegation that the warranty deed to decedent under date of August, 1926, was in effect a mortgage, has not been sustained by the evidence." Concurrently with its findings it was ordered "that plaintiff take nothing by her suit, and that defendant have judgment for his costs." As substituted plaintiff in error, Emmett's contentions are: (1) That the deed was in fact a mortgage; (2) that the debt it was given to secure had been paid; (3) that the deed executed by Georgia in 1928, reconveying the property to Mrs. Ardell, had in fact been delivered.

For a number of years prior to August 10, 1926, plaintiff was the owner of lots 13 and 14, block 124, of the former town of South Pueblo, now a part of the city of Pueblo, which was the family home, and from which she also derived the rental income from five apartments. It is a thirteen-room dwelling, which in 1928 was valued at approximately $8,000, and at the time of trial was estimated to be worth about $5,500. August 10, 1926, plaintiff's title was subject to two mortgages, one in the

amount of $2,350, held by a Mrs. Amelia Walker, the other in the sum of $850. The property also was subject to certain unpaid taxes in the sum of $1,200.51, which were delinquent, resulting in a tax sale. Being unable to raise sufficient funds to redeem from the tax sale, and the mortgagee Walker demanding that the title to the property be cleared by redemption, plaintiff persuaded her daughter Georgia to negotiate a loan to take care of this item, and, as a part of this transaction, she, August 10, 1926, conveyed to Georgia by warranty deed the property in question, under the terms of which the grantee assumed and agreed to pay the indebtedness, payment of which was secured by the two mortgages hereinbefore mentioned. This warranty deed was not recorded until March 16, 1928. July 3, 1928, two days prior to her marriage to defendant, Georgia reconveyed the property here involved to plaintiff. This latter deed never was recorded; and while the evidence concerning its delivery to plaintiff is in conflict, it appears that it either was destroyed or disappeared on or about the same day that Georgia died. We do not detail the evidence as to the possession of this deed. Suffice it to say that it is undisputed that it was in existence a few days before Georgia's death. Plaintiff testified positively that it was delivered to her shortly after its execution and remained in her possession until Georgia's death, at which time she was living in the same room with her daughter, and that it disappeared immediately thereafter. There was evidence by a maid employed by defendant that she, at Georgia's request, burned some papers in the furnace at the home on the day Georgia died, but that she did not know their purport. Defendant testified that he had seen the deed of July 3, 1928, a number of times in the possession of Georgia, but that he could not state whether it was an absolute deed or given as security. It is undisputed that plaintiff remained in possession and control of the property until July, 1931, and received the rentals from the leased

apartments up to that time. Georgia did not reside on the premises until some time in June, 1930, and defendant did not move in until the following October. It also is undisputed that plaintiff lived on the premises involved until 1936, when she was forceably ejected by defendant. Plaintiff's evidence is to the effect that after she had, at the request of Georgia and defendant, relinquished the rented apartments in July, 1931, she rented the entire premises to Georgia for $75 per month. This is disputed by defendant, who, however, admits that Georgia, and not he, had control of the premises after plaintiff left. From this evidence, and other facts contained in the record, the conclusion is inescapable that the deed of August 10, 1926, was not absolute, but was given as security—in fact, this is barely disputed in the evidence. While the delivery of the deed of July 3, 1928, to plaintiff is disputed, it clearly appears from the evidence that she continued to collect all the rentals and retained absolute control of the property until July, 1931, at least. Whether she thereafter was in possession is in dispute, but the status of mortgagor and mortgagee remained unchanged by any subsequent events. Counsel for defendant contend that in June, 1930, under the terms of an oral agreement, Georgia paid Emmett $600 in consideration of any claims that he or plaintiff had against the property in question. We have carefully read the record, and there is no evidence from which a finding to sustain such an oral agreement could properly have been made, nor did the trial court make such a finding. In the final analysis, its finding was that the deed of August 10, 1926, was absolute. We cannot concur in that finding. In our opinion, the evidence is clear and convincing that the deed was given as security; that in fact it was executed and delivered as a mortgage and should, therefore, be adjudged as such. It was reversible error to determine otherwise.

In view of our conclusion, the question of the payment of the debt for which the security was given should be open to further hearings; moreover, questions concerning credits, if any, such as payment of taxes and other expenditures to which defendant may be entitled, should receive further consideration. Since, as we conclude, the deed was in fact a mortgage, the rentals to which plaintiff would be entitled, also should be considered. If an accounting between the parties should result in favor of defendant, the balance found to be due should be declared to be a lien on the property involved.

■ There is no merit to the defense of laches. Admittedly, the deed of 1928 was in existence in 1937, and the first alleged interruption in plaintiff's possession of the premises did not occur until June, 1936. Under these circumstances, there was no fatal delay in bringing the action which was instituted in 1938.

The judgment is reversed and the cause remanded for such further proceedings as are not inconsistent with this opinion.

Mr. Chief Justice Young and Mr. Justice Hilliard concur.

Mr. Justice Bakke dissents.

Mr. Justice Bakke, dissenting.

With due respect to my associates, I think the court in its opinion misconceives defendant's position in this case. He does not base his defense upon the theory that the 1926 deed was not given as security, but grounds it upon the oral agreement made in 1928, by which the deed was to become absolute, i.e., what it is on its face. The fact of the recording of the 1926 deed at that time, viz., 1928, is strong evidence in support of that defense.

In my opinion, the proper rule to be applied in this case is that, "By an independent parol agreement the mortgagor may waive his rights under a deed which

was originally in effect a mortgage, and if this agreement is supported by a consideration, or is partially acted upon by the parties or fully performed, the mortgagor is estopped to deny the grantee's absolute title. The grantee has the legal title already, and the grantor may cut off all right to redeem by a receipt of an adequate consideration therefor and an informal release of all his interest in the property. But the new agreement must not only be founded upon adequate consideration, but must be fair and reasonable in its terms and free from fraud and undue influence." 1 Jones on Mortgages (7th ed.) §338. See, also, 41 C.J. 344, §111, and *Murphy v. Booker*, 139 Ark. 469, 214 S.W. 63.

The 1928 oral agreement was pleaded as a special defense. It was met by a plea of confession and avoidance based upon alleged prior indebtedness, some of it over twenty-five years old. Is it any wonder the trial court refused to place any credence in testimony of that sort?

We are confronted time and again in the opinion with reference to evidence that is conflicting. Why is there not in this case an adherence to the well-established rule, that findings based upon conflicting testimony will not be disturbed on review?

We recently celebrated the One Hundred Fiftieth anniversary of the bill of rights. Article VII of that declaration provides, inter alia: "No fact tried by a jury [the rule is the same where the trial court is the trier of facts] shall be otherwise re-examined in any court of the United States than according to the rules of the common law."

The opinion here contains the statement, "we cannot concur" in the finding that the 1926 deed was absolute. On its face it is absolute as definitely as any instrument could be. Emmett admits there was an oral agreement in 1928, which agreement was the principal issue in this case, and, under the rule hereinabove quoted, the lower court was amply justified in its findings.

Emmett alleged that the 1926 deed was a mortgage and that the debt which it was given to secure had been paid. This allegation was the basis of the suit. In the light of his contentions, why, pray, did his mother relinquish all claim to the property, as is indicated by her letter to Georgia offered in evidence, wherein she asks for just a place in which to sleep and eat; and by the fact that the mother made application for an old age pension, in which she declared under oath that she neither owned nor had an interest in any real estate. By allowing recovery in this case, the stamp of approval is placed on possible fraud in old age pension cases.

There is nothing in the record to indicate that Emmett may be able to produce any better evidence than he did at the hearing. Since both mother and daughter are now deceased, further attempts to establish the agreements between them would be futile without violating statutory provisions bearing on the admission of testimony, since both parties appear now in a representative capacity.

Georgia's good faith in this whole matter was amply demonstrated by the naming of her mother as a beneficiary in a substantial life insurance contract, the proceeds of which the mother admittedly received, in addition to which the improvements Georgia and her husband placed upon the property, more than offset any possible equity that Emmett may have. This would be true even assuming that the $600 which Emmett admittedly received as part consideration for the 1928 oral agreement was in payment of an old debt which he alleged in his reply was the fact. I do not think it was in payment of this old debt.

There is ample testimony to sustain the findings of the trial court and which would clearly support an affirmance of the judgment here.

For the reasons mentioned, I dissent.