No. 16,150.

PULLARA v. HED.

(215 P. [2d] 321)

Decided February 6, 1950.

Mr. V. G. SEAVY, for plaintiff in error.

Mr. VINCENT CHRISTIANO, for defendant in error.

*In Department.*

MR. CHIEF JUSTICE HILLIARD delivered the opinion of the court.

A SUIT in partition by defendant in error, plaintiff below, against plaintiff in error, defendant below. Plaintiff set forth two causes of action in his complaint, the first cause pertaining to real property, and the second to personal property, adequate description attending in each instance. The trial court found that "plaintiff and defendant are tenants in common both as to the realty and the personalty involved herein, and that each are entitled to an undivided one-half interest therein." Judgment consistent with such findings, and not challenged as to form, was entered.

In the first cause of action, plaintiff alleged, and defendant, answering, admitted, that the parties "are the owners in fee simple as tenants in common" of the real property involved. In a further answer, defendant alleged "that on or about December 28, 1940, the parties hereto acquired title to that real property described in Paragraph One (1) of the complaint herein; that the purchase price thereto was approximately thirty-five hundred dollars ($3500) and that plaintiff at the time mentioned in Paragraph Nine (9) of the complaint herein advanced the sum toward such purchase price as therein alleged to-wit: nine hundred sixty-five dollars and fifteen cents ($965.15). That said sum was advanced upon and with the understanding and agreement between the parties hereto that upon the repay-

ment thereof plaintiff was to deed to defendant all of his apparent and ostensible right and interest in and to said real property as evidenced by the warranty deed referred to in Paragraph Three (3) of said complaint. That defendant has offered to and is ready, willing and able to refund and pay all of such sum to plaintiff, but that such offer has been refused."

In the interest of accuracy, although it is not important to our inquiry, we pause to note that the purchase price of the property was three thousand three hundred fifty dollars, not three thousand five hundred dollars as alleged by defendant in his answer; and that plaintiff advanced eight hundred sixty-five dollars and fifteen cents, not nine hundred sixty-five dollars and fifteen cents, as defendant further alleged.

It appears that in November, 1940, defendant, then a tavern keeper and restauranteur in leased premises, was advised of the sale of the property of his occupancy, and that he would have to vacate it. Casting about for a new location, defendant learned that the property here was for sale, but since he was not financially able to make the purchase, he besought plaintiff to buy it and lease it to him. Plaintiff declined to be interested in the proposed purchase. Defendant, seemingly not easily discouraged, continued his contact with the owner of the property, and finally they agreed that the owner would sell, and defendant would buy, the property at and for three thousand three hundred fifty dollars, cash. When they had thus agreed, defendant made a small down payment; that accomplished, defendant again called the matter to plaintiff's attention, saying, as plaintiff testified, "Oscar, I have got a new proposition I would like to talk over with you," and "we will go partners in that property." He said the purchase price was "around three thousand three hundred dollars." "It will take a loan," he added. The inducement to plaintiff was that if he would get a loan on the property for twenty-five hundred dollars, and pay the balance

of the purchase price, defendant agreed that title would be conveyed to both of them, that defendant would conduct his tavern and cafe there, and out of the "profits of the business," he would make the payments on the loan.

Plaintiff, not defendant, nor both together, then repaired to a building and loan association, and there learning that a loan of twenty-five hundred dollars could be obtained, he signed a written application therefor, the loan to be repaid at the rate of $49.50 per month, a part thereof to cover the estimated taxes from year to year. He then accepted defendant's offer, that is to say, to lend his credit for the twenty-five hundred dollars, and pay the balance of purchase price. When all preliminaries had been completed, the parties, including the seller of the property and his agent, met at the office of the loan association, a warranty deed was drawn by the seller's agent, in which the names of plaintiff and defendant, appeared as grantees, and it was executed by the seller. At the same time plaintiff and defendant, and their respective wives as well, executed a note for twenty-five hundred dollars to the building and loan association, together with a deed of trust on the property being purchased, as security for its payment. Thereupon, the loan association paid the seller twenty-five hundred dollars, represented by the loan; plaintiff paid him eight hundred sixty-five dollars and fifteen cents; the documents covering the deal were exchanged; and the deed and deed of trust were recorded. The total payments appear to have exceeded the agreed price by fifteen dollars and fifteen cents, which, if of any importance, likely was due to some incidental adjustments.

■ ■ Defendant gave no direct evidence in support of his "further answer," hereinabove quoted, except to say it was a security transaction, which statement was directly denied by plaintiff in his version of the agreement, already reviewed. On cross-examination, defend-

ant was asked why plaintiff's name appeared as a grantee in the deed, and he answered, "Well, I figured I had to give him some kind of security. I didn't have nothing else to give him for security. Q. And now you say you owed this eight hundred sixteen dollars to Mr. Hed for making this payment and that it was a security transaction? A. That's right. Q. What was the rate of interest to be on this? A. I don't know. Q. In other words there wasn't any talk about interest? A. There was nothing said. Q. When was the maturity date of this eight hundred and sixteen dollars? A. I don't know, because he didn't lend it to me, he gave it to [the loan company]. Q. In other words the money was given to [the loan company] and not to you? A. That's right. Q. Did you tell Mr. Landis [representative of loan company] about this being a security transaction? A. I didn't say nothing. Q. Did you tell Mr. Hed that it was a security transaction? A. No, sir. Q. Did you tell Mrs. Hed that it was a security transaction? A. I didn't tell her nothing. Q. Did you tell your wife about it? A. Nothing." In short, as unmistakably appears, the only person who "knew" of the *security feature* of the transaction was defendant, a secret which he kept with remarkable fidelity from December, 1940, to August 28, 1947, when he filed his answer in this suit. The trial court resolved the point adversely to defendant, a resolution not vulnerable, as we are persuaded; to the challenge that it is contrary to the evidence. Incidentally, as is worthy of mention, in such a controversy the burden of establishing a claim that a formal deed of conveyance was intended as a mortgage, rests upon the party advancing such claim. "A deed purporting to be an absolute conveyance may be proven by parol evidence to be, in effect, a mortgage. * * *. But to have that effect, the evidence must be clear, certain and unequivocal, and must be convincing beyond a reasonable doubt." *Oppegard v. Oppegard*, 90 Colo. 483, 10 P. (2d) 333.

In relation to the personal property, the trial court found that the title thereto was vested in both parties. Our study of the record leads us to like conclusion. Some of the items were from defendant's earlier tavern, and some were bought elsewhere, and were paid for by plaintiff. The reason therefor, as defendant himself testified, was that he did not have the money. In addition to some new items, plaintiff bought the furniture already in use in the eight sleeping rooms on the second floor of the real property which they purchased. The furniture so purchased was not of great value, but it served in the matter of renting those rooms. Whether what defendant already had was of greater or less value than the contributions of plaintiff is problematical, and unimportant in any event, as we think. The trial court, as already seen, resolved generally for plaintiff, and must be presumed to have had that feature of the controversy in mind.

A bill of sale signed jointly June 20, 1945, by plaintiff and defendant, and running to John C. Pullara or Jane Pullara, his wife, and Oscar A. Hed or Ruth A. Hed, his wife, conveyed the personal property here involved, the description being identical with that set forth in the complaint. There can be no doubt, we think, that the parties here regarded such personal property as belonging to both of them, and the document to which reference has been made strongly supports that conclusion. A further supporting fact in that regard—and this applies to both causes of action—is that of the two keys to the property, each party having one, and each being free to come and go in relation to the property as he desired.

We are persuaded that the trial court resolved in full light. Let the judgment be affirmed.

MR. JUSTICE JACKSON and MR. JUSTICE MOORE concur.