## No. 21570.

CHARLES D. CROSBY *v.* GATEWAY MOTEL, INC. AND
C. S. DAWN.
(431 P.2d 23)

Decided August 28, 1967.

MARTIN P. MILLER, for plaintiff in error.

JOHN R. STEWART, ZARLENGO, ZARLENGO, SEAVY & MUL-LIGAN, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE PRINGLE.

THIS is a suit brought by Charles D. Crosby against Gateway Motel, Inc. and C. S. Dawn for conversion of 144 shares of stock in the Fort Lyon Canal Company. The parties appear here in the same position as in the trial court and they will be referred to as plaintiff and defendants, or by name.

In 1956, Crosby sold a tract of land ("tract A") in Bent County, Colorado to William R. Jones, Sr. and his wife, Cora C. Jones. Jones executed a note and deed of trust on tract A to Crosby for $13,000. In 1957, Jones desired to purchase an adjoining piece of property ("tract B"). Jones evidently had trouble getting financing for the purchase of tract B, and the result was the execution of the series of documents which gave rise to this controversy. In order to facilitate the purchase of Tract B, Crosby released his original deed of trust on Tract A. Jones then executed a promissory note for $12,000 to Crosby, who immediately negotiated the note to The First National Bank of Las Animas, Colorado. The money thus acquired was then used to purchase tract B. Jones then executed a first deed of trust to the bank to secure the payment of the original note on tract

A as well as to secure Crosby's liability as co-signor of the note on tract B. These deeds of trust covered *both* tracts A and B, together with 144 shares of the capital stock of the Fort Lyon Canal Company and the right to irrigation water evidenced by it.

In addition, as a part of the deal for the purchase of tract B, Jones and Crosby signed the agreement which is the subject of this suit. The agreement contained a recital of consideration given by Crosby to Jones which allegedly made possible the purchase of tract B by Jones. The agreement then provided that Jones would (1) execute, on demand, a mineral deed to Crosby covering the newly purchased tract B, and (2) would transfer to Crosby, on demand made at any time within five years, 144 shares of stock in the Fort Lyon Canal Company which Jones had acquired as part of the purchase of tract B. The mineral deed was executed, and its validity has not been put in issue here. The instant case concerns only the status of the 144 shares of stock in the Fort Lyon Canal Company.

In 1960, Jones agreed to convey tracts A and B, including the various water rights appurtenant to the tracts, and also including the 144 shares of stock, to Gateway Motel, Inc. At this point, Crosby made written demand that Jones transfer the stock to Crosby under the terms of the 1957 agreement. The transfer was not made, and the stock ultimately was transferred to Gateway, as part of the sale of tracts A and B by Jones to Gateway. Crosby then brought this action against Gateway Motel, Inc., and C. S. Dawn, an officer of the motel company for conversion of the stock. The various deeds of trust to the bank and to Crosby have been paid by Jones or Gateway and releases have been executed pursuant to order of court. The only claim remaining is Crosby's claim to the 144 shares of stock. The trial court found that the value of the 144 shares of stock is in excess of $6,000.

The trial court held that the 1957 contract between

Jones and Crosby concerning the shares of stock was void for lack of consideration. The court entered judgment dismissing the complaint, and Crosby has brought writ of error from that judgment.

Crosby asserts that the 1957 contract is valid and absolute on its face and was executed for valid and sufficient consideration, and that therefore he has the right to the stock or at least the right to recover the value of the stock in this action in conversion. Gateway contends that there was no consideration for the 1957 contract and that the trial court, therefore, properly refused to enforce the contract. (Gateway has never asserted that it did not have full notice of the claim which Crosby is attempting to assert prior to the sale of the stock by Jones to Gateway.) Assuming, arguendo, that Crosby did have a right to demand transfer of the stock, Gateway then asserts that this right was waived by Crosby when he executed an agreement for release of the claim on June 3, 1960 — just prior to the sale of the tracts and the stock by Jones to Gateway.

We must ascertain the legal effect of the 1957 contract between Jones and Crosby" * * * not alone by any particular provision of the written contract itself, but from all the stipulations and agreements contained therein, as well as in the notes given in connection therewith. * * *" *A. H. Andrews & Co. v. Colorado Sav. Bank,* 20 Colo. 313, 36 P. 902. We have repeatedly held that it may be shown that an instrument absolute on its face was nevertheless intended by the parties to evidence a security transaction. Thus, a warranty deed which is absolute on its face may nevertheless be no more than a mortgage. See *e.g., Larson v. Hinds,* 155 Colo. 282, 394 P.2d 129; *Padia v. Hobbs,* 132 Colo. 165, 286 P.2d 613; *Pullara v. Hed,* 121 Colo. 234 215 P.2d 321; *Ardell v. Blamey,* 108 Colo. 576, 121 P.2d 485; *Logsdon v. Quiat,* 102 Colo. 560, 81 P.2d 770. And an apparently absolute conveyance of chattels may in fact be a chattel mortgage or a conditional sales transaction. See generally, *Illinois*

*Bldg. Co. v. Patterson*, 91 Colo. 391, 15 P.2d 699; F. Storke & D. Sears, Colorado Security Law, § 10 (1955). In general, if a transaction resolves itself into a security transaction, whatever may be its form and whatever name the parties may have given it, it is in effect a "mortgage" and will be treated as such. *Rocky Mountain Gold Mines, Inc. v. Gold, Silver & Tungsten, Inc.*, 104 Colo. 478, 93 P.2d 973.

■ From an analysis of the instruments involved in the instant case, it is clear that the provision of the 1957 contract between Jones and Crosby which provided for the transfer of the stock on demand was, in reality, a "disguised security transaction." See, F. Storke & D. Sears, *Colorado Security Law*, § 9 (1955). The various deeds of trust all included the 144 shares of stock as part of the security for the payment of the notes. This is inconsistent with Crosby's claim that the stock was his at all times and that only the formal transfer was postponed. The inclusion of the stock in the deeds of trust was a recognition by all concerned that the stock was still owned by Jones and not by Crosby. Further, it cannot be regarded as a mere coincidence that the five-year period within which Crosby might make demand for the transfer of the stock is identical to the five-year term of the promissory note which Jones executed (and Crosby co-signed) as a part of the deal for the purchase of tract B. It is clear that the parties only inserted this transfer clause as a means of circumventing the normal methods of foreclosure which would be available to a secured creditor upon default on the secured obligation. Where we would allow an absolute deed or other apparently absolute conveyance to be set aside, as in the decisions cited above, *a fortiori*, we will not enforce an executory contract to make the same type of conveyance as in the instant case.

■ We hold that the clause of the 1957 agreement which required Jones to transfer the stock to Crosby, on demand made at any time within five years, was merely

a form of security for the payment of the underlying obligations and there was no consideration for a sale. The underlying obligations have been paid in full and the security is therefore released. Since we hold that Crosby has no remaining claim to the 144 shares of stock, the assertion made by Gateway that Crosby has waived his claim is now moot.

The judgment is affirmed.

MR. CHIEF JUSTICE MOORE and MR. JUSTICE DAY concur.