Mr. Justice Kelley
delivered the opinion of the Court.
This cause is here on a writ of error directed to a judgment of the District Court in and for the City and County of Denver in favor of the defendants below, Western Federal Savings and Loan Association and Bill E. Tom, Trustee, and against Everett Schmelzle and Thelma Schmelzle, plaintiffs in the trial court.
The parties appear here in the same order as in the trial court and will be referred to as they were in the trial court, or by name.
The plaintiffs filed their complaint, under R.C.P. Colo. *400 105, to adjudicate the rights of all parties with respect to a portion of Block 3, Progress Pleights, City and County of Denver. They alleged that on December 14, 1960, they executed a warranty deed to Key, Inc. (Key), to facilitate and expedite construction loans and development of all of Block 3 (the property); that plaintiffs, on March 13, 1961, entered into an agreement with Key, which was recorded May 12, 1961, providing for the subdivision of Block 3 into thirty-nine unimproved building sites; that the agreement in part provided:
“3. First parties [Key] are hereby obligated to retain ten (10) building sites in Block Three (3) * * * and to pay to second party [Schmelzles] the amount of * * * ($2900.00) per building site, said payment being due upon sale by first party to third parties of the last of the said first ten (10) building sites. First parties have advanced on behalf of second party certain moneys to pay certain tax liens, a Deed of Trust and other encumbrances and costs incurred in transfer. Said advances by first party shall first be credited before any payment is made to second parties.
“4. After the sale of the tenth (10th) lot by first parties to some third party, first parties may then elect to discontinue all operations on the said Block Three (3), Progress Heights, in which event they shall convey by Warranty Deed the balance of the said Block Three (3), Progress Heights to second parties free and clear of all encumbrances, taxes to be pro-rated, OR, they may elect to continue development of other lots in Block Three (3). “5. If first party elects to keep developing the property, then first party covenants and agrees to complete improvement upon the lots in groups of five (5), each group of five (5) to be completed within a period of eight (8) months from the date of issuance of building permits thereon by the City and County of Denver, and to continue at the rate of five (5) houses every eight (8) months thereafter, but in the computation of the said eight (8) months time, any delay caused by the un *401 availability of utilities or weather conditions which prevent construction shall be added to the said period of time.
“IT IS AGREED that first party may elect not to continue with development of the said property at the end of completion of each five (5) lot group, in which event first party shall convey the unused portion of Block Three (3), Progress Heights Subdivision to second parties.
“In the event first party does exercise its option herein above granted to continue beyond the first ten (10) sites, they shall be and hereby are obligated to pay to second parties the sum of Twenty-nine Hundred Dollars ($2900.00) per site, upon sale of the site to third parties.”
The complaint further alleged that Key failed to complete the development within the stipulated times provided for in the agreement and, as a result thereof, plaintiffs were entitled to a reconveyance of the unimproved portion of the property as well as the portion thereof not timely improved.
None of the defendants appeared except Bill E. Tom, trustee (Tom), and Western Federal Savings and Loan Association (Western Federal). The nonappearing defendants, Paul Walden, Inc., Grebb Electric Co., Modern Plastic Laminating Co., Colorado Brick Co., and Henry Hopp, were mechanic’s lien claimants who had assigned their claims to Western Federal. Key, apparently in financial distress, failed to appear and its default was entered.
Western Federal, in its own right and as assignee of the mechanics’ liens, and Tom, by responsive pleadings, denied plaintiffs’ ownership and right to the property; alleged that their interests were prior and superior to the claims of plaintiffs by virtue of the mortgages and the conveyance from Key. Western Federal prayed for the foreclosure of its deeds of trust.
Also, Western Federal counterclaimed against plaintiffs and cross-claimed against Key, praying for judg *402 ment on the defaulted notes; the amounts paid for the assigned mechanics’ liens, attorney fees, and for an order of sale of the property described in the deeds of trust.
The plaintiffs, by way of reply, generally denied the allegations of the counterclaim and prayed for its dismissal.
There have been two trials of this case to the court on its merits, before two different judges. Both judgments have favored the defendants. After the first judgment, however, the trial court granted plaintiffs’ motion for new trial. The denial of plaintiffs’ motion for new trial following the second trial led to this writ of error.
In their motion for new trial, and here by assignment of error, the plaintiffs maintain that:
(1) As vendors they had an equitable lien for $2900 on each of the five lots upon which dwellings were built, which liens were senior to the deeds of trust of Western, and that the court erred, as a matter of law, in failing to so rule; and
(2) by virtue of the contract of March 13, 1961 (see: paragraph 4 of agreement), they were entitled to the reconveyance of the twenty-four unimproved lots, and that the court erred, as a matter of law, in failing to order the reconveyance.
A review of the factual situation is necessary to a resolution of the issues confronting us.
It is explicit from the testimony of the representatives of Western as well as that of the plaintiffs that the December 14, 1960, conveyance from the Schmelzles to Key was a direct result of the inability of Key to obtain financing for the development of Block 3, Progress Heights, on the strength of an unrecorded contract in which Schmelzles had agreed to convey the lots upon the completion of houses to be built by Key, when sold to third parties, and upon the payment by Key of $2900 for each lot. Western Federal informed the officers of Key and the Schmelzles that it could not loan money to Key for the development of the project site nor for the construe *403 tion of houses, unless its advances were secured by a first deed of trust from Key. The deed to Key on December 14, 1960, and the agreement of March 13, 1961 (recorded May 12, 1961), ensued as a result of the negotiations alluded to.
Following the December 14, 1960, conveyance, Key, on January 10, 1961, executed a note for $50,600 for land development securing it by a first deed of trust on all of Block 3, except a tract in the northeast corner where plaintiffs’ home was located. (Hereafter, reference to Block 3 does not include that part retained by plaintiffs for personal residence.) Also, in January and February 1961, Key obtained construction loans from Western Federal for the construction of houses on the initial ten lots pursuant to the agreement. These houses were built and sold, construction loans paid off, and the plaintiffs were paid $2900 per site by Key, in accordance with the March 1961 agreement; $1700 was also paid to Western Federal for each of the ten sites to reduce the sum actually advanced on the $50,600 note. These ten lots are not in controversy.
After the sale of the first ten houses, Key, in October 1961, pursuant to its rights under the March 1961 contract, elected to continue its development of the property and accordingly selected a group of five lots in the northwest corner of Block 3. In October 1961 Key obtained from Western Federal commitments for loans of $14,400 each to build the five houses. At about this same time Key executed a note for $30,000 to Western Federal and secured it by a first deed of trust on the twenty-four remaining lots. The proceeds of this loan were used to liquidate an unpaid balance of approximately $6,000 due Western Federal for advances made under the terms of the $50,600 note and trust deed of January 1961. No additional sums were advanced on the $30,000 note.
Key became involved financially and was unable to complete the five houses with the $14,400 commitments. At this point Western Federal moved to protect itself. *404 It induced the officers of Key, who had personally obligated themselves on each of the notes held by Western Federal, to execute a quitclaim deed to the twenty-four unimproved lots to Bill E. Tom, trustee. Tom was the attorney for Western Federal and acting in its behalf.
Tom testified that the consideration for the quitclaim deed from Key was “not having a foreclosure against the property at that time and possible deficiency judgment, which at that time would be forthcoming.” It should be noted that although the officers of Key were personally liable on the notes secured by Western Federal’s trust deeds, they had no such responsibility under the terms of the agreement with the Schmelzles.
Tom testified that he had intended to include the five houses in the quitclaim deed, but because of the failure to do so it was now necessary to foreclose the deeds of trust as to those properties. Western Federal, in order to complete the five houses, paid out sums in excess of the $14,400 commitments. Each of the five houses, during construction, had been sold to third parties on contract but, because of this litigation, the sales agreements were modified to “rental agreements” until such time as Western Federal or Tom could deliver a “merchantable title.”
The plaintiffs contend here, as they did in the trial court, that, by the terms of the agreement of March 13, 1961, they were entitled to the reconveyance of the twenty-four unimproved lots; that by virtue of Western Federal’s actual notice of that agreement, Tom took whatever title he received as trustee, subject to the terms of the March 13, 1961, agreement.
The plaintiffs further point out that although the contract was recorded after the deed from Schmelzles to Key, it was recorded prior to the quitclaim deed from Key to Tom. Neither Tom nor Western Federal deny knowledge of the existence or terms of the March 13, 1961, agreement prior to the deed from Key to Tom. They argue, however, and the trial court agreed, that *405 Key had the legal title to the property by virtue of the warranty deed from the plaintiffs, and that Tom, by virtue of the deed from Key, is the record owner of the twenty-four lots, and by reason thereof “has full right, power and authority to convey said properties, encumbered by said Deeds of Trust, free and clear of any claims whatsoever of the plaintiffs and other defendants, except those of Western Federal Savings and Loan.”
The trial court, as to the five lots, stated that,
“* * * the lien-securing notes held by the Western Federal Savings and Loan are first, primary, and paramount, and ahead of any other liens or rights especially claimed by the plaintiffs or anyone else. The Western Federal is entitled to foreclose the mortgages.”
We are in general agreement with this statement except as subsequently noted.
The trial court, as a part of its decree, ordered the clerk of the court to enter judgment in favor of plaintiffs and against defendant Key, Inc., in the amount of $84,100. No error has been assigned as to this phase of the judgment.
The primary question presented for our determination is: What rights, if any, do plaintiffs have in the twenty-four lots by virtue of the March 13, 1961, agreement with Key, in view of their prior conveyance of the legal title?
The trial judge held that the plaintiffs had neither a vendor’s lien nor an equitable mortgage. In arriving at this conclusion, the court said:
“* * * To have an equitable mortgage, there would have to be some debt owed by the grantor to the grantee, and there is no such testimony here, and in fact there was no such debt; and as to vendors’ liens, if any there were, they have been waived by the Plaintiffs in executing the warranty deed to Key, Inc., and transferring title without any encumbrance.”
The trial court ordered the foreclosure of the five lots in the northwest corner of Block 3, but recognized *406 no interest whatsoever in the plaintiffs. This resulted, in a strict foreclosure and a forfeiture of the interests of the plaintiffs. The five houses, during the course of the litigation, have been rented by the trustee.
Under the terms of the agreement of March 13, 1961, the plaintiffs were entitled to $2900 upon the sale of each lot to a third party. Inasmuch as there has been no sale to a third party without notice, the plaintiffs’ interest in the five lots has not been extinguished, and it follows that no indebtedness of Key to plaintiffs has been created under the terms of the agreement. This interest of the plaintiffs is, of course, subject to the first lien of Western Federal for sums advanced under the terms of its trust deed on each lot, less net rents collected by the trustee.
The trial court took the position that the execution and delivery of the deed to Key by the Schmelzles in and of itself operated as a waiver of all of their rights in Block 3 and placed the Schmelzles in the position of creditors only. We disagree.
It should be kept in mind that the initial agreement between the plaintiffs and Key contemplated that plaintiffs would retain legal title to the property until the improvement and sale of each lot to a third party. It was only after both parties had determined that funds for the development of the property and construction of the houses could not be obtained except by the transfer of title to Key that the title was, in fact, transferred. This occurred on December 14, 1960. It was not until March 13, 1961, that the second agreement was reduced to writing. It was recorded on May 12, 1961, and its existence regularly appeared on all title commitments received by Western Federal relating to Block 3.
This agreement providing, as it does, for the reconveyance of those lots which Key elected not to improve in groups of five, certainly manifests an intention on the part of both parties that the plaintiffs retained some kind of an interest in the property until such time as Key *407 transferred the title to a third party for value and without notice. Only upon the conveyance by Key to third parties was it contemplated that the plaintiffs would become creditors of Key to the extent of $2900 per lot.
We conclude, therefore, as to the twenty-four lots, that the interest which the plaintiffs retained under the terms of the March 13, 1961, agreement, is an equitable interest. Whether it falls within the apparent narrow limits of a vendor’s lien or the somewhat broader definition of an equitable lien is immaterial. It quite obviously was an equitable interest intended to secure (retain) the plaintiffs’ interest in the property until the sale to a third party purchaser for value, subject at all times, of course, to Western Federal’s advances. Western Federal had a security interest. See Storke and Sears, Colorado Security Law, § 5. As far as the parties to this lawsuit are concerned, we can see no difference between the deed from Key to Tom and the trust deed from Key to Western Federal. Both were given to secure Key’s debt to Western Federal. Neither constituted a sale to a “third party.” The deed from Key to Tom transferred Key’s interest and barred its equity of redemption, but it could not transfer Schmelzles’ interest. The whole transaction was for the security of Western Federal. Key did not, under the circumstances, have the power or authority to surrender or waive the plaintiffs’ interest. Too, there was no new consideration as between Western Federal and the plaintiffs to support the surrender of plaintiffs’ interest in the property. For the principles of law and reasoning supporting the conclusions reached here, see Western Federal Savings and Loan Association of Denver v. National Homes Corporation, 167 Colo. 93, 445 P.2d 892; Crosby v. Gateway Motel, Inc., 163 Colo. 384, 431 P.2d 23; Larson v. Hinds, 155 Colo. 282, 394 P.2d 129; Restatement of the Law of Restitution § 161 (1937).
The conduct of the plaintiffs is consistent with its retention of an equitable interest in the property and inconsistent with an intention to waive the interest, *408 except to the extent of sums advanced for land development and for the construction of houses which all parties anticipated at the time it was agreed title would be transferred by the plaintiffs to Key. Consequently, we hold that the amounts advanced by Western Federal under its several deeds of trust are valid first liens, but nothing more.
The twenty-four lots are subject to a first lien for whatever balance may be owing Western Federal on the $30,000 note and Western Federal has first liens on each of the five lots by virtue of its deeds of trust to the extent of all sums properly advanced under the terms of its trust deeds. The plaintiffs have an equitable interest in each of the five lots to the extent of $2900, subject to the prior liens of Western Federal. In the unlikely event that there is any equity remaining after the foregoing, it should be credited upon the judgment of the plaintiffs against Key.
The judgment is affirmed to the extent that it ordered the foreclosure of Western Federal’s trust deed on the five lots, but is reversed as to that part which denied the Schmelzles any interest under their agreement with Key. Further, the judgment is reversed as to the holding that Schmelzles had no interest in the twenty-four lots; and the cause is remanded for further proceedings not inconsistent with the views herein expressed.