**CITY OF BOULDER, Colorado,
Plaintiff-Appellant,**

v.

**SHERRELWOOD, INC.,
Defendant-Appellee.**

Nos. 78–565, 78–998.

Colorado Court of Appeals,
Div. II.

June 21, 1979.
Rehearing Denied July 19, 1979.

Steven D. Barnett, City Atty., Jane W. Greenfield, Asst. City Atty., Boulder, for plaintiff-appellant.

Guy A. Hollenbeck, Boulder, for defendant-appellee.

PIERCE, Judge.

Plaintiff, the City of Boulder, appeals from the trial court's order construing a consent decree which plaintiff entered into with defendant, Sherrelwood, Inc. We affirm.

Defendant owns a tract of real property in the City of Boulder. In 1969, the City approved defendant's Planned Residential Development (PRD) and final site plan for the property, subject to the then-existing land use regulations and ordinances. The approval also provided that the project was to be completed by April 1974, though subsequent negotiations extended this date to July 1974.

Defendant's preliminary plat map was approved by the City engineer on May 2, 1973. In April of 1974, defendant request-

ed a two year extension for the PRD, arguing that it had mistakenly construed the time limitation to mean only that construction on the project had to be *started* by July 1974. The City's Planning Board denied the request for an extension on the grounds that defendant had failed to begin the project and that the PRD would violate certain zoning, subdivision, and land use regulations promulgated in 1971.

In May of 1974, the City filed a declaratory judgment action against defendant seeking a declaration that the PRD had expired. During the course of the trial, the parties agreed to resolve their dispute by requesting the trial court to enter a consent decree. The decree, entered in November of 1975, provided that the PRD was valid, and that defendant had a right to proceed with the project according to certain conditions and pursuant to a schedule attached to the decree. The schedule called for defendant to file a program development plan with the court by January 7, 1976, which plan was to include a description of all "reasonable and feasible" financing arrangements which defendant had made.

Defendant submitted its proposed program development plan within the time required by the consent decree, but the City filed objections to the plan, claiming that it violated time limitations contained in the decree. A series of hearings and orders followed, culminating in the trial court's order of April 20, 1978, which provided the following:

1) By June 14, 1978, defendant would file a loan commitment and an affidavit showing adequate financing to complete the project within 480 days of the start of construction.

2) Within five days of filing the above, defendant would file the subdivision plat and landscape plan with the City for its approval, after which the City would notify defendant if all of the conditions had been met for obtaining a building permit.

3) Within ten days of the above approval, defendant would file its building permit applications. Construction would be deemed to have "commenced" when the building permits for three specified units had been issued. Then defendant would, at least 15 days before construction of any succeeding unit, and according to the original time table attached to the decree, file its building permit for that unit.

The order further provided that should defendant fail to perform any of these obligations, the PRD would be immediately terminated.

## I.

The City appeals from this order, arguing that the trial court erred in failing to rule that the consent decree contained a time limitation on the project, and therefore in failing to declare that the PRD had expired some time in 1978 for defendant's lack of adequate financing and failure to commence construction. Contrary to the City's arguments, we hold that the trial court's order properly effectuated the parties' intent as it was expressed in the consent decree.

The decree represents an agreement by the parties on two fundamental issues: 1) Defendant's PRD is valid and 2) defendant will be permitted to proceed with the project subject to the trial court's continued jurisdiction and active supervision. These two broad thrusts belie the City's argument that the decree should be interpreted as placing any fixed time limit on the completion of the project. It is true that Paragraph 3 of the decree states that defendant should be "restored to the same essential position and circumstances as existed . . as of the date of the commencement of this litigation . . . ." And, while this language, standing alone, might lead to the conclusion that a time limit parallel to the original July 1974 limit was contemplated by the decree, language in the very same sentence indicates otherwise:

"[D]efendant [shall] be permitted to proceed with the construction of the approved project *pursuant to a court approved and supervised time schedule and development plan.*" (emphasis added)

We must review the consent decree as a whole, and look at all of its provisions and

their interrelationships. *See Crosby v. Gateway Motel, Inc.*, 163 Colo. 384, 431 P.2d 23 (1967). When viewed in this manner, it is clear that the decree vests a great deal of discretion in the trial court, not only in terms of constructing an initial workable time table, but also in terms of its authority to modify the schedule as subsequent events dictate. *See, e. g.*, paragraph 7 of the Decree:

"The Court shall then retain jurisdiction of the matter for the purpose of supervising the development of the Property . . and for the purpose of making such further order as it deems appropriate in regards thereto, including the right to modify the development program . . . ."

Under these circumstances, we cannot say that the trial court abused its discretion in issuing the April 20, order, either in permitting the construction to proceed or in approving the quality of defendant's financing plans.

We also note that, contrary to the City's argument, the trial court was under no obligation to attach findings of fact or conclusions of law to its April order, since that order was a decision based on post-decree motions. C.R.C.P. 52(a). *See Garrow v. Garrow*, 152 Colo. 480, 382 P.2d 809 (1963).

## II.

The City also urges this court to declare a provision in the consent decree, which exempts the PRD from post-1975 floodplain regulations, void as against public policy. However, we agree with defendant that the trial court properly refused to void these provisions.

The decree unambiguously stated that the PRD was to be:

"[S]ubject to all land use and floodplain regulations of the Plaintiff City of Boulder in effect as of May 1, 1969, *but free of any such regulation adopted by the City of Boulder subsequent to May 1, 1969.*" (emphasis added)

To the extent that the consent decree was a judgment of the trial court, this language rendered the floodplain issue res judicata.

And, to the extent the decree is viewed only as a contract, the provisions quoted above fixed the parties' obligations with respect to the floodplain regulations, and as such, those provisions cannot be modified without defendant's consent. *See Atchison v. City of Englewood*, Colo., 568 P.2d 13 (1977).

We recognize that there may be some room for the modification of a consent decree based on a showing that new and unforeseen circumstances have rendered the existing decree unjust or unsound. *See, e. g., United States v. I. T. T. Continental Baking Co.*, 420 U.S. 223, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975); *United States v. Swift*, 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932). *See generally* Note, *Requests by the Government for Modification of Consent Decrees*, 75 *Yale L.J.* 657 (1966). We also recognize that recent events have deepened the City's concern for protecting its residents from the ravages of floods—a concern manifested by the 1978 adoption of new floodplain regulations. However, the particular balance struck between the predictability of consent decrees and the accommodation of changed public interests is a matter addressed to the sound discretion of the trial court, particularly where, as here, the court has specifically retained jurisdiction to strike such a balance. *See generally* Note, *Flexibility and Finality In Antitrust Consent Decrees*, 80 *Harv.L.Rev.* 1303 (1967).

The City had its opportunity to argue these public policy questions to the trial court and the court rejected them. That rejection was not an abuse of discretion. *See United States v. American Society of Civil Engineers*, 446 F.Supp. 803 (S.D.N.Y. 1977).

Judgment affirmed.

SILVERSTEIN, C. J., and SMITH, J., concur.